UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JODY L SISCO,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 2:18-cv-00098-CKD

ORDER

Plaintiff Jody Sisco seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1] Plaintiff filed a motion for summary judgment. (ECF No. 14.) The Commissioner has opposed plaintiff's motion and filed a cross-motion for summary judgment. (ECF No. 15.)

For the reasons discussed below, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the Commissioner's final decision.

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15) and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 6, 17.)

1

I.     BACKGROUND

Plaintiff was born on November 20, 1961; earned a degree from a business college to be a legal secretary; is able to communicate in English; and previously worked as a legal secretary, a secretary, and a clerk typist.[2] (Administrative Transcript ("AT") 38-39, 64-65, 175.)

On February 17, 2015, plaintiff applied for DIB, alleging that her disability began on May 31, 2013. (AT 15, 175.) Plaintiff claimed that she was disabled due to fibromyalgia, depression, anxiety, chronic fatigue syndrome, and morbid obesity. (AT 71.) After plaintiff's application was denied initially and on reconsideration, an administrative law judge ("ALJ") conducted a hearing on February 16, 2017. (AT 33-70.) At the hearing, plaintiff's attorney moved to amend plaintiff's alleged onset date to January 27, 2015. (AT 60-61.) The ALJ subsequently issued a decision dated April 11, 2017, determining that plaintiff had not been under a disability as defined in the Act, from July 1, 2013, through March 31, 2015, the date last insured. (AT 15-28.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on November 17, 2017. (AT 1-3.) Plaintiff filed this action on January 16, 2018, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II.    ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ erred by failing to acknowledge the amended alleged onset date and by improperly relying on evidence prior to that date; (2) whether the ALJ improperly weighed the medical opinion evidence; and (3) whether the ALJ improperly discounted plaintiff's credibility.

III.   LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.  DISCUSSION

    A.  Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step analytical framework.[3]  Preliminarily, the ALJ determined that the claimant last met the

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program.  42 U.S.C. §§ 401 et seq.  This provision defines disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. § 423(d)(1)(a).  A five-step sequential evaluation governs eligibility for DIB.  See 20 C.F.R. §§ 404.1520, 404.1571-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

    Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

    Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

    Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled.  If not, proceed to step four.

    Step four:  Is the claimant capable of performing her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

    Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

    The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

insured status requirements of the Act on March 31, 2015.  (AT 17.)  At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful activity from July 1, 2013 through her date last insured, March 31, 2015.  (Id.)  The court noted that while plaintiff originally alleged that her disability began on May 31, 2013, in both his decision and at the hearing, the ALJ inexplicably misstated the alleged onset date as July 1, 2013.  (See AT 17, 60-62, 175.)  Moreover, the ALJ did not acknowledge the amended alleged onset date in his decision.

At step two, the ALJ found that through the date last insured, plaintiff had the following severe impairments: fibromyalgia, anxiety disorder, affective disorder, obesity, and degenerative joint disease of the knees.  (AT 17.)  However, at step three, the ALJ concluded that through the date last insured plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AT 17-18.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC"), finding that through the date last insured, plaintiff had the ability to perform a wide range of light work as defined in 20 C.F.R. § 404.1567(b), with the additional limitations:

> The claimant has been able to lift and/or carry up to 20 pound[s] occasionally and 10 pounds frequently; occasionally climb ladders, ropes, or scaffolds; frequently climb ramps or stairs; and frequently stoop, crouch, kneel or crawl.  The claimant is limited to simple (defined in the Dictionary of Occupational Titles (DOT) as levels 1 and 2), routine and repetitive tasks involving low-stress work with only occasional changes in the work setting.  She can occasionally interact with the public, coworkers, and supervisors, but she should not be required to perform tandem tasks.

(AT 19.)

At step four, the ALJ determined that though the date last insure, plaintiff was unable to perform any past relevant work.  (AT 26.)  However, at step five, the ALJ found that through the date last insured, in light of plaintiff's age, education, work experience, RFC, and the vocational expert's testimony, there were jobs that existed in significant numbers in the national economy that plaintiff could have performed.  (AT 27.)  Thus, the ALJ concluded that plaintiff was not under a disability, as defined in the Act, at any time from July 1, 2013, through March 31, 2015, the date last insured.  (AT 28.)

4

B.     Plaintiff's Substantive Challenges to the Commissioner's Determinations

As a preliminary consideration, "[p]laintiff concedes that the mental limitations determined by the ALJ are accurate, and only disputes the ALJ's determination concerning her physical limitations." (ECF No. 14 at 9.)

1.     *Whether the ALJ erred by failing to acknowledge the amended alleged onset date and by improperly relying on evidence prior to that date*

"While not listed as a separate issue, plaintiff submits that the [ALJ's] failure to recognize that [plaintiff] amended her alleged onset date did prejudice her claim, and remand is warranted based on this failure alone." (ECF No. 14 at 13.) Relatedly, plaintiff argues throughout her motion that the ALJ improperly relied on evidence in the record from before the amended alleged onset date. (See Id. at 9-17.) Plaintiff's arguments are unsupported and unavailing.

In a DIB claim, an ALJ is directed to "develop [a claimant's] complete medical history for at least the 12 months preceding the month in which [she] file[s] [her] application." 20 C.F.R. § 404.1512(b)(1). An ALJ is also directed to consider all relevant evidence in the record when assessing a claimant's RFC and deciding whether a claimant is disabled. See 20 C.F.R. §§ 404.1520(a)(3), 404.1545(a)(1).

While the Ninth Circuit has held that "[m]edical opinions that predate the alleged onset of disability are of limited relevance," it has also clarified that such limited relevance is particularly true "where disability is allegedly caused by a discrete event." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1165 (9th Cir. 2008). In a subsequent, unpublished opinion, the Ninth Circuit emphasized that Carmickle did not relieve the ALJ of his duty to consider all the medical evidence in the record. See Williams v. Astrue, 493 F. App'x 866, 868-69 (9th Cir. 2012) (The ALJ erred in ignoring medical opinions from up to six years prior to the plaintiff's alleged onset date); see also Hubble v. Astrue, 467 F. App'x 675, 677 (9th Cir. 2012) (The ALJ permissibly concluded that plaintiff's "ability to work with similar impairments in the past undermines her inability to work now").

Here, plaintiff amended the alleged onset date of her disability from May 31, 2013 to January 27, 2015. (AT 60-61, 175.) As such, because plaintiff's date last insured was March 31,

2015, plaintiff alleges a period of disability of slightly over two months. (AT 10.) Plaintiff faults the ALJ for relying on evidence in the record that predates this two-month period when rejecting the opinion of Brian Ecker, M.D., and discounting plaintiff's credibility. (See ECF No. 14 at 9-17.) The court disagrees.

First, at the hearing in this matter, the ALJ addressed plaintiff's attorney regarding the evidence in the record. Through her counsel, plaintiff accepted the record as currently constituted:

> ALJ: All right. Okay, Mr. Fraulob, looking at the record, I see Exhibits 1A through 7F, which I'll go ahead and admit at this point, unless you have an objection.
>
> ATTY: I have no objections, Your Honor.

(AT 36.) The accepted record includes the disputed medical evidence, upon which the ALJ relied. (See AT 371-577.) This was clearly appropriate, as the regulations direct the ALJ to base his determination on a review of the entire record. See 20 C.F.R. §§ 404.1520(a)(3), 404.1545(a)(1).

Second, the record does not demonstrate that any discrete event caused plaintiff to become disabled on the amended alleged onset date of January 27, 2015. While plaintiff received a diagnosis of fibromyalgia from rheumatologist Thu Zar Myint, M.D. on this date, there is no indication anywhere in the record that this condition actually began on this date, nor that it was caused by some discrete event. (AT 333-37.) Indeed, plaintiff's primary care physician Dr. Ecker, who had treated plaintiff for over 30 years, opined that her fibromyalgia symptoms and limitations date back to 1990. (AT 394-99.) Thus, plaintiff's medical records prior to January 27, 2015 have significant relevance because plaintiff's disability was not caused by any discrete event on that date and because the record indicates this condition began twenty-five years earlier.

Third, the disputed evidence prior to January 27, 2015 did not include any medical opinions. (See ECF No. 14 at 9-17.) Rather, plaintiff takes issue with the objective medical evidence upon which the ALJ relied. (Id.) The limited case law that is even arguably in favor of plaintiff's position specifically concerns medical opinions rendered prior to the alleged onset date. See Carmickle, 533 F.3d at 1165. Objective medical evidence regarding plaintiff's alleged

6

symptoms and limitations prior to the alleged onset date is more probative of plaintiff's longitudinal progress than a single medical opinion rendered prior to such a date, and is arguably more important for an ALJ to consider. Especially where, as here, plaintiff's primary care physician opined that plaintiff had symptoms and limitations from the allegedly disabling condition for decades prior to the amended alleged onset date.

Therefore, the ALJ appropriately considered the entire record when assessing plaintiff's RFC and determining whether she was disabled prior to the date last insured. See 20 C.F.R. §§ 404.1512(b)(1), 404.1520(a)(3), 404.1545(a)(1); See also Tommasetti, 533 F.3d at 1041.

What is more, the ALJ not only properly relied on the disputed medical evidence, but also, he may very well have erred had he ignored such evidence. As explained, the regulations clearly direct an ALJ to base her decision on a review of the entire record. Surely plaintiff would have cried foul if the ALJ here had ignored some critical piece of evidence in the record demonstrating disability, simply because it predated the amended alleged onset date.

At the same time, the court acknowledges that the ALJ incorrectly listed the alleged onset date as July 1, 2013, and failed to acknowledge the amended alleged onset date of January 27, 2015. However, this error was harmless. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless").

Fundamentally, the ALJ's conclusion—that "claimant was not under a disability, as defined in the Social Security Act . . . **at any time** from July 1, 2013 . . . through March 31, 2015" (AT 28 (emphasis added))—necessarily includes the finding that plaintiff was not under a disability from January 27, 2015 through March 31, 2015. Thus, the ALJ's decision sufficiently addresses the period of disability that plaintiff alleges.

Moreover, because the record does not demonstrate that some discrete event caused plaintiff's disability on January 27, 2015, this date has extremely limited significance to the ALJ's determination of whether plaintiff was disabled prior to the date last insured.

    2. *Whether the ALJ improperly weighed the medical opinion evidence*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195,

7

1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) there are contradictory opinions in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[4] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Here, several months after the date last insured, on November 9, 2015, plaintiff's primary care physician Dr. Ecker filled out a largely check-box fibromyalgia/chronic fatigue residual functional capacity questionnaire. (AT 394-99.) This report directs the practitioner to "[i]dentify the clinical findings and test results which show your patient's medical impairments." (AT 394.) Dr. Ecker responded in a conclusory fashion, without citing to any specific objective finding or

---

[4] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

8

medical record that "clinical findings [consistent with] above diagnosis. Lab tests unremarkable." (Id.) As the ALJ accurately observed and summarized, Dr. Ecker proceeded to opine far greater restrictions than any other opinion in the record:

> [Dr. Ecker] imposed limitations that would preclude even sustained sedentary work (i.e., limited lifting to less than ten pounds, sitting to two hours cumulatively, and standing and/or walking to less than two hours cumulatively). Within the time the claimant could sit, stand, or walk, he included an option to sit or stand at will and indicated she would often need unscheduled rest breaks of 5 to 10 mins before returning to work (AT 397). She would need to elevate her legs 100 percent of the time with prolonged sitting. She could engage in gross or fine manipulation or reaching only two percent of the workday. She could bend and twist at the waist only two percent of the workday. He further opined the symptoms were severe enough to interfere with attention and concentration constantly and that these symptoms and limitations date back to 1990.

(AT 25.)

Because this opinion was contradicted by the opinions of the State agency medical consultants, which the ALJ gave great weight (AT 25, 80, 95-96), the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Ecker's opinion. Lester, 81 F.3d at 830.

The ALJ gave little weight to Dr. Ecker's opinion, reasoning that "it is not supported by [Dr. Ecker's] own examination findings and is inconsistent with the claimant's positive response to Neurontin." (AT 25) The ALJ further reasoned that "if the claimant's pain were as severe as [Dr. Ecker] indicated, he would likely have referred her to a rheumatologist sooner and would have followed the rheumatologist's recommendation for physical therapy." (AT 26.)

The ALJ's reasoning is supported by substantial evidence in the record. As the ALJ documented, the treatment records from 2013 through 2016 include largely normal findings. (See AT 21-24) Specifically, Dr. Ecker frequently noted plaintiff had "no systemic symptoms" and did not identify any examination abnormalities aside from obesity, ear wax, an infected wound, and soreness after a car accident. (See AT 296-97, 303-04, 310, 316-17, 323-24, 369-70, 436, 444, 453, 477-99, 487, 524-25.)

Moreover, as the ALJ observed in great detail, plaintiff had success controlling her condition with Neurontin. (AT 23-24.) Dr. Ecker prescribed plaintiff low-dose Neurontin after she saw the rheumatologist on January 27, 2015, and the medication was shown to be effective.

9

(AT 23-24, 370, 436.) Indeed, plaintiff waited three months between being prescribed the Neurontin and following up, at which time she indicated that the drug was helping, and Dr. Ecker increased the dosage. (AT 436.) Two months later, plaintiff followed up again, and continued to report that the medication was helping, but that it was causing vivid dreams. (AT 444.) Dr. Ecker adjusted the dosage to address this side effect. (Id.) Three months later, plaintiff returned to Dr. Ecker and did not complain about her fibromyalgia. (AT 453.) Then, for the next year, she continued to take Neurontin, which appeared to control her symptoms. (AT 24, 462, 487-88, 528.) Dr. Ecker did increase the dosage of Neurontin in February of 2016, after plaintiff complained of increased generalized pain, which worsened after a dog scratch. (AT 496.) Taking these records together, the ALJ reasonably concluded that plaintiff's fibromyalgia was improved by medication.

Additionally, the ALJ appropriately relied on Dr. Ecker's failure to refer plaintiff to a rheumatologist sooner or to follow up with the rheumatologist's recommendations. As explained, the record fails to demonstrate that some discrete event caused plaintiff's fibromyalgia in January 2015, and Dr. Ecker opined that plaintiff's limitations dated back to 1990. (AT 399.) Yet, Dr. Ecker did not refer plaintiff to a specialist until 2015. (AT 333-37, 399.) And, after the referral, Dr. Ecker did not follow up on the specialist's recommendation for physical therapy. This logically undermines Dr. Ecker's opinion that plaintiff had such severe physical limitations from her fibromyalgia.

Therefore, the court finds that the ALJ provided several specific and legitimate reasons for discounting Dr. Ecker's opinion.

        3.    *Whether the ALJ improperly discounted plaintiff's credibility*

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the

> symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking. . . ." Molina, 674 F.3d at 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

As an initial matter, the court notes that the ALJ did not entirely discredit plaintiff's allegations of physical limitations caused by her medical conditions. Indeed, the ALJ limited plaintiff to light work, along with more restrictive lifting, carrying, and positional limitations. (See AT 19.) Nevertheless, to the extent that the ALJ discounted plaintiff's testimony regarding her symptoms and functional limitations, the ALJ provided several specific, clear, and convincing reasons for doing so.

### i. Objective medical evidence

"[A]fter a claimant produces objective medical evidence of an underlying impairment, an

ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)).

Although lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch, 400 F.3d at 681.

Here, the ALJ determined that the objective medical evidence does not "strongly support the alleged severity of the claimant's symptoms and limitations at any time" during the relevant period. (AT 21.) The ALJ supported this conclusion with a detailed discussion of the objective medical evidence in the record. (AT 21-25.) For example, as explained above, Dr. Ecker's objective examinations of plaintiff include largely normal findings, aside from obesity, ear wax, an infected wound, and soreness after a car accident. (See AT 296-97, 303-04, 310, 316-17, 323-24, 369-70, 436, 444, 453, 477-99, 487, 524-25.)

Additionally, the ALJ accurately observed that

> On follow-up with the rheumatologist on February 10, 2015, the claimant appeared to be in no acute distress. An extensive physical examination was essentially normal, aside from tenderness to palpation over all areas and multiple tender points consistent with fibromyalgia [AT 356]. She had no synovitis and normal Range of Motion of all joints. She had no focal motor or sensory defects. . . . [She had nonspecific laboratory findings.] The rheumatologist noted treatment of fibromyalgia is individualized and multidisciplinary but that warm water exercise, physical therapy was the most important part of the management, and that regular exercise, weight control, and a healthy lifestyle were also important [AT 358]. Degenerative joint disease could be managed with stretching exercises, physical therapy, Extra Strength Tylenol, topical cream and corticosteroid injections [AT 357].

(AT 23, 355-58.)

Notably, this particular examination occurred during the limited period between January 27, 2015 and March 31, 2015, to which plaintiff seeks to limit the ALJ's review. (AT 355-58.) Even assuming, for the sake of argument, that such a limited review were warranted, this note constitutes substantial evidentiary support of the ALJ's conclusion that the object medical evidence undermines the alleged severity of plaintiff's symptoms and limitations.

12

### ii. Gaps in treatment

Failure to seek consistent treatment is a proper consideration when evaluating credibility. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). "We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . . Moreover, a claimant's failure to assert a good reason for not seeking treatment, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." Molina, 674 F.3d at 1113-14 (citation and quotation marks omitted).

The ALJ pointed to gaps in plaintiff's treatment for her conditions, noting that "prior to the date last insured, the claimant was seldom seen for treatment . . . [and that] it was not until January 2015 that she presented for evaluation of diffuse muscle pain." (AT 21.)

Plaintiff argues that the ALJ's reliance on a lack of treatment prior to January 2015 is improper because she has amended her alleged onset date to January 27, 2015. (ECF No. 14 at 12.) At the same time, plaintiff inconsistently argues that the ALJ should have given great weight to the opinion of Dr. Ecker, who claimed that plaintiff's fibromyalgia symptoms and limitations date back to 1990. (Id. at 14-17.)

Further, the objective evidence in the record after January 27, 2015 supports the ALJ's conclusion here. After February 2015, plaintiff did not follow up until June 2015, and thereafter only followed up infrequently, presenting with very few fibromyalgia related issues, which medication was reportedly helping. (See AT 370, 436, 444, 453, 462, 487-88, 496, 528.)

Still, even if these gaps in treatment were not a legitimate reason for the ALJ to discount plaintiff's testimony, the error is harmless because the ALJ provided several other valid reasons for only partially crediting plaintiff's testimony. See Molina, 674 F.3d at 1115 (harmless error when ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record).

### iii. Conservative treatment

Plaintiff's relatively conservative treatment was also a proper consideration. See Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (reasoning that a favorable

response to conservative treatment undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

The ALJ reasonably observed that "treatment has been conservative in nature, and not commensurate with the degree of limitations alleged. . . . Once diagnosed with fibromyalgia, she was prescribed low-dose Neurontin. . ." (AT 21.) As explained, this is supported by the record. (See AT 370, 436, 444, 453, 462, 487-88, 496, 528.) Additionally, plaintiff was conservatively prescribed physical therapy, exercise, and weight control for her condition. (See AT 23, 355-59.)

### iv. Condition can be controlled with medication

A condition that can be controlled or corrected by medication is not disabling for purposes of determining eligibility for benefits under the Act. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006); Montijo v. Sec'y of Health & Human Servs., 729 F.2d 599, 600 (9th Cir. 1984); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983). As explained, the ALJ accurately documented that plaintiff had success controlling her fibromyalgia with Neurontin. (See AT 23-24, 370, 436, 444, 453, 462, 487-88, 496, 528.)

### v. Daily activities

Substantial evidence supports the ALJ's finding that plaintiff's daily activities are inconsistent with her allegations of disabling symptoms and limitations. (AT 21, 42, 46-52.)

"While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. . . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1112–13 (citations and quotation marks omitted); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595,

600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility).

The ALJ reasoned that, under oath at the hearing, plaintiff admitted to a wide range of activities that undermined her allegations, including:

> that she could cook, does do some household chores, and does socialize with friends. She testified she likes to read and watch television. She can use a computer for email and Facebook, has a cellphone with internet, and can text. She socializes with girlfriends, typically once a month for lunch. She occasionally goes to dinner with her spouse. She has a driver's license and she does drive. She can and does go out on her own. In fact, she drives to the gym three times a week where she plays racquetball for an hour each time. She also drives to doctor's appointments.

(AT 21, 42-52.)

To be sure, the record also contains some contrary evidence, such as plaintiff's and her husband's written statements, suggesting that plaintiff's activities are more limited. (See AT 205-23.) However, it is the function of the ALJ to resolve any ambiguities, and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one"). As the Ninth Circuit explained:

> It may well be that a different judge, evaluating the same evidence, would have found [the claimant's] allegations of disabling pain credible. But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ. . . . Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.

Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

### vi. Personal observations at hearing

Although the ALJ's observations of the claimant at the hearing may not form the sole basis for discrediting the claimant's testimony, such observations may be used in the overall

credibility evaluation. Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985); SSR 96-7p, at *8. Here, the ALJ permissibly discredited plaintiff's subjective complaints, in part, because "[t]he claimant was able to participate in the hearing without any overt pain behavior, was able to respond to questions in an appropriate manner, and was able to participate in the hearing closely and fully without being distracted." (AT 21.)

V. CONCLUSION

Therefore, for the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 15) is GRANTED.
3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.
4. The Clerk of Court shall close this case.

Dated: January 25, 2019

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE